IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 9, 2007

Charles R. Fulbruge III
Clerk

No. 06-60963

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

MCSHELLE FOSTER WILLIAMS, also known as Rosie McShelle
Williams

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Mississippi

Before WIENER, DeMOSS, and PRADO, Circuit Judges.

PRADO, Circuit Judge:

McShelle Foster Williams ("Williams") appeals her conviction for three counts of embezzlement and aiding and abetting embezzlement in violation of 18 U.S.C. § 666(a)(1)(A) and one count of conspiracy to embezzle funds as prohibited by 18 U.S.C. § 666(a)(1)(A) in violation of 18 U.S.C. § 371. For the reasons that follow, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The evidence the government presented at trial demonstrated the following: Williams began working as the payroll clerk and Deputy City Clerk for the City of Durant, Mississippi, in 1988. Her responsibilities included preparing payroll checks and W-2 forms. City policy required that all paychecks

have two signatures: one from the Mayor or Vice Mayor and another from the City Clerk or Deputy City Clerk. After she prepared the paychecks, Williams would have Rosie Hogsett ("Hogsett"), the City Clerk and Williams's supervisor, sign the checks. If Hogsett was unavailable, however, Williams would sign the checks herself in her role as the Deputy City Clerk. She would then transmit the checks to the Mayor or Vice Mayor for a second signature. The Board of Aldermen determined the salaries for all city employees, and the minutes from the Board's bi-monthly meetings listed all payroll checks.

During an audit of the City's financial records, auditors noticed that Hogsett and Williams had received extra payroll checks during 2000, 2001, and 2002. These checks were not listed on Hogsett's or Williams's W-2 forms. Upon further review, auditors found that Hogsett had received approximately $28,000 and that Williams had received approximately $32,000 in additional checks over a three-year period. The evidence demonstrated that Williams had signed her own extra checks twenty-nine times and that Hogsett had signed the remainder of the extra checks before taking them to the Mayor or Vice Mayor. At least once, Williams prepared several checks for herself on the same day but varied the amount of each check.

When questioned, Williams admitted that she had received the additional checks. She claimed that the City's two Mayors during her tenure had authorized her to receive "advance checks."[1] Williams contended that this was a common practice, as the Mayors had authorized early checks for the Chief of Police and an Alderwoman on several occasions. To explain why the check amounts varied, Williams stated that she was instructed to prepare them in this way rather than in one large check to "be in line with [her] payroll." She also

---

[1] Eddie Logan served as Mayor from 2001 to 2005, and James T. Wiley served as his predecessor.

claimed that the Mayors told her not to put the extra salary on her W-2s so that the City's payroll would remain balanced.

Hogsett pleaded guilty to embezzlement and testified against Williams. Hogsett stated that she and Williams periodically signed additional checks for each other when they needed them. Hogsett testified that the Mayors had approved her receiving a check earlier in the week than due on occasion, but that neither Mayor had approved additional checks above her regular salary. She stated that she had the Mayor or Vice Mayor sign the payroll checks in large stacks and that the Mayor or Vice Mayor did not analyze each check before signing it. Former Mayor Logan and former Alderman and Vice Mayor Roberts also testified that they never authorized extra checks for Hogsett or Williams. In particular, Mayor Logan stated that he had authorized "early checks" on a few occasions for employees other than Hogsett or Williams, but that by "early check" he meant that he was authorizing someone to receive a check a few days ahead of time.

Williams testified on her own behalf. She stated that she believed the Mayors had authorized her to receive these advance payments and that she had intended to pay them back. She admitted, however, that she would have to work for free for over two years to make up for her "early" paychecks.

A jury convicted Williams for three counts of embezzlement and aiding and abetting embezzlement in violation of 18 U.S.C. § 666(a)(1)(A) and one count of conspiracy to embezzle funds as prohibited by 18 U.S.C. § 666(a)(1)(A) in violation of 18 U.S.C. § 371. The court denied Williams's request for a directed verdict at the close of the government's case in chief and again at the close of the evidence. The district court sentenced her to sixteen months' imprisonment on each count, to run concurrently, followed by a three-year term of supervised release. The court also ordered her to pay restitution of $32,122.12 and a special assessment fee of $400.00. Williams appeals her conviction, arguing that a

statutory exemption makes 18 U.S.C. § 666 inapplicable to the embezzlement of a salary and that the evidence is insufficient to support her convictions for conspiracy or aiding and abetting. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II. DISCUSSION

Because Williams moved for a judgment of acquittal at the trial, she preserved the usual de novo standard of review for challenges to the sufficiency of the evidence. See United States v. Harris, 420 F.3d 467, 470 (5th Cir. 2005). Under this standard, we determine whether a reasonable jury could find that the evidence establishes the guilt of the defendant beyond a reasonable doubt. United States v. Lewis, 476 F.3d 369, 377 (5th Cir. 2007). We view the evidence in the light most favorable to the government and give the government the benefit of all reasonable inferences and credibility choices. See United States v. Harvard, 103 F.3d 412, 421 (5th Cir. 1997).

A.    18 U.S.C. § 666(c) is inapplicable to salary that is not "bona fide" or earned in the "in the usual course of business"

Williams argues that, as a matter of law, the government cannot convict her under 18 U.S.C. § 666(a) because she falls under the exception in § 666(c). 18 U.S.C. § 666(a) provides:

> Whoever, if the circumstance described in subsection (b) of this section exists—
>> (1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof—
>> (A) embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that . . .
>> (ii) is owned by, or is under the care, custody, or control of such organization, government, or agency; . . .
> shall be fined under this title, imprisoned not more than 10 years, or both.

Subsection (b) requires the organization listed in subsection (a) to receive benefits in excess of $10,000 under a federal program. Williams does not dispute that this provision applies because the City of Durant received over $10,000 in federal funds every year in 2000, 2001, and 2002. Her argument is that § 666(c) exempts her from the reach of § 666(a). Section 666(c) provides: "This section does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business." Williams argues, therefore, that her "advance" checks were part of her bona fide salary in the usual course of the City's business.

Williams's argument misses the mark. Previous decisions from other circuits demonstrate that a salary is not bona fide or earned in the usual course of business under § 666(c) if the employee is not entitled to the money. For example, in United States v. Tampas, the Eleventh Circuit considered whether § 666(c) exempted Tampas's personal charges to his employee credit card. 493 F.3d 1291, 1299 (11th Cir. 2007). The court ruled that § 666(c) did not apply because the charge account was not part of Tampas's bona fide salary. Id. Similarly, in United States v. Dwyer, the First Circuit ruled that a reasonable jury could conclude that the wages an employee received due to Dwyer's fraudulent actions in filling out the employee's timesheets "were not made in the usual course of business and thus were not bona fide." No. 05-2051, 2007 WL 2404476, at *14 (1st Cir. Aug. 24, 2007). The court further noted that the wages would not be bona fide even if they were for some kind of "informal and unauthorized compensatory time reimbursement." Id. The Fourth Circuit also recognized the limit of § 666(c) in United States v. Grubb, where the court determined that § 666(c) did not apply to the extra wages that a part-time investigator for the Sheriff's office received because he "performed little work for the Sheriff's office" and did not "perform functions for the sheriff's office on a

regular basis." 11 F.3d 426, 434 (4th Cir. 1993) (internal quotation marks omitted).

Whether wages are bona fide and earned in the usual course of business is a question of fact for the jury to decide. See Dwyer, 2007 WL 2404476, at *14 (citing United States v. Cornier-Ortiz, 361 F.3d 29, 36 (1st Cir. 2004)). A reasonable jury could conclude that Williams's "advance" paychecks were actually extra payments for work she had not performed and therefore were not part of her bona fide salary.[2] An employee who receives three years of additional compensation amounting to over $30,000—which represents more than twice Williams's regular annual salary—is more culpable than an employee who simply works fewer hours than her regular paycheck requires.[3] Compare United States v. Harloff, 815 F. Supp. 618, 619 (W.D.N.Y. 1993) (dismissing an indictment based on § 666(c) because the employees simply worked fewer hours than their normal compensation required) with United States v. Abney, No. 3-97-CR-260-R, 1998 WL 246636, at *2 (N.D. Tex. Jan. 5, 1998) (holding that § 666(c) did not exempt prosecution under § 666(a) when a payroll clerk altered her co-employees' timesheets so they would be paid for overtime hours that the employees had not worked). Williams fails to make any plausible argument that she legitimately earned the "advance" payments. Cf. United States v. Mills, 140 F.3d 630, 633-34 (6th Cir. 1998) (holding that the government could not prosecute the defendant for an illegal employment procurement process under

---

[2] Although the indictment did not require the jury to find explicitly that this money was not Williams's bona fide salary, the jury's conclusion that Williams embezzled the money demonstrates that the jury implicitly determined that the money was not Williams's bona fide salary or earned in the usual course of the City's business.

[3] Indeed, we find it immaterial that Williams testified that she believed the Mayors authorized the extra checks or that the record of the extra checks appeared in the minutes of the Board of Aldermen's meetings. The jury apparently rejected Williams's argument that this evidence absolved her of criminal liability, and our review of the record reveals that this decision was not unreasonable.

§ 666(a) because the government did not allege that the jobs in question were unnecessary or that the salaries that the employees received were not bona fide for those jobs). As the district court in Abney stated,

> This was not a situation in which Defendants decided to depart early from work or failed to work their regular hours. Rather, Defendants were obtaining money through fraudulent means, which essentially amounts to stealing or misappropriation of funds. As a result, their compensation was neither "bona fide" nor received "in the ordinary course of business."

Abney, 1998 WL 246636, at *2; see also United States v. Shelton, 816 F. Supp. 1132, 1137 (W.D. Tex. 1993) ("Subsection (c) of Section 666 does not serve to absolve the Defendant of wrongdoing merely because the funds were used to pay a 'salary,' especially where that 'salary' is not bona fide."). Much like the defendants in these previous cases, Williams fails to show how the extra payments were part of her bona fide salary. Therefore, we hold that § 666(c) does not exempt Williams from prosecution because a reasonable jury could conclude that the extra checks she received were not a part of her bona fide salary earned in the usual course of business.

B.     The government presented sufficient evidence to convict Williams of conspiracy and aiding and abetting Hogsett in her embezzlement

The jury found Williams guilty of conspiracy to commit and aiding and abetting Hogsett's embezzlement. Regarding the conspiracy conviction, Williams argues that the government failed to show that she entered into any agreement with Hogsett.[4] As to aiding and abetting, Williams asserts that the government presented no evidence that she knew about Hogsett's crime. Williams rests her

---

[4] To convict Williams of a conspiracy under 18 U.S.C. § 371, the government had to show "(1) an agreement between two or more persons to pursue an unlawful objective; (2) the defendant's knowledge of the unlawful objective and voluntary agreement to join the conspiracy; and (3) an overt act by one or more of the members of the conspiracy in furtherance of the objective of the conspiracy." United States v. Peterson, 244 F.3d 385, 389 (5th Cir. 2001).

claim on the fact that signing payroll checks was part of her job, making the evidence that she signed Hogsett's extra paychecks insufficient to demonstrate criminal intent. The evidence, however, belies Williams's arguments.

A reasonable jury could infer that Williams and Hogsett had an implicit agreement to assist each other in obtaining extra checks above their regular salaries. See United States v. Freeman, 434 F.3d 369, 376 (5th Cir. 2005) (noting that a conspiracy can consist of an informal or tacit understanding between the conspirators).[5] Hogsett testified that she and Williams prepared extra checks for each other over the span of three years. Given that the government presented sufficient evidence that Williams knew she was not entitled to her own additional checks, a reasonable jury could infer that Williams also assisted Hogsett in fraudulently obtaining Hogsett's extra compensation. That is, the jury relied on more than just the fact that Williams signed Hogsett's checks to convict Williams for her involvement in Hogsett's criminal activity. Instead, the jury's conclusion that Williams violated § 666(a) for receiving her own extra checks and Hogsett's testimony that they were both involved in the scheme provides support for its conclusion that Williams conspired with and aided and abetted Hogsett in embezzling the City's funds. In short, viewing the evidence in the light most favorable to the government, a reasonable jury could convict Williams of conspiracy and aiding and abetting Hogsett in her embezzlement.

## III. CONCLUSION

For the reasons stated above, we affirm Williams's conviction.

AFFIRMED.

---

[5] The district court properly instructed the jury that it needed to find that Williams and Hogsett had at least an implicit agreement to convict Williams of a conspiracy.