# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-30715

United States Court of Appeals
Fifth Circuit

**FILED**
August 5, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

DEMITORIS C. ALEXANDER, also known as Big Tachi, also known as Big Dog;  COLIN Y. KNOX, also known as Niles, also known as Bearwolf,

> Defendants - Appellants

Appeals from the United States District Court
for the Middle District of Louisiana
USDC No. 3:15-CR-83

Before CLEMENT, HAYNES, and WILLETT, Circuit Judges.

PER CURIAM:*

Defendants Demitoris Alexander and Colin Knox were convicted of felony drug offenses.  Alexander appeals two of his convictions and his sentence, arguing a lack of sufficiency of the evidence.  Knox appeals his conviction for conspiracy to distribute cocaine in excess of five kilograms (specifically challenging the amount of cocaine) and his sentence.  But the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-30715

record contains overwhelming evidence to support the challenged convictions. Several of Defendants' sentencing arguments have either been waived or forfeited; applying appropriate standards of review, none prevail. We therefore AFFIRM.

## I.    Background

Alexander was a large-scale cocaine dealer in Louisiana with suppliers in Houston, Texas. For the drug syndicate's trips to Houston, Alexander placed vacuum-sealed cash in the load car's secret compartment. He paid women to drive back and forth from Houston. The drug suppliers removed cash from the secret compartment at an agreed upon location and replaced it with cocaine. Alexander would later rendezvous with the load car to pay the driver. Once one of Alexander's associates removed the cocaine, the keys to the load car were returned to Alexander. After a close encounter with law enforcement, Alexander traveled to Houston to get a new load car, rented a storage unit for the car, and recruited a new driver, Andrea Rumore.

Rumore was stopped by law enforcement on her second trip to Houston, and the load car was seized. Law enforcement discovered eighteen kilograms of cocaine in the secret compartment. Alexander stayed at Rumore's house that night to watch her. He then changed his modus operandi. Houston suppliers began delivering cocaine to Louisiana, with Alexander paying for the drugs upon delivery. The first delivery to Alexander had over fifteen kilograms of cocaine. In the first nine months of 2013, Alexander's associates sold over 350 kilograms of cocaine that they received from him.

Kelly Williams was a large-scale cocaine dealer in Baton Rouge, Louisiana. Defendant Colin Knox was a member of Williams's drug organization—Williams allowed Knox to party with him, and provided Knox money and drugs. In exchange, Knox served as Williams's enforcer, using violence and threats when deemed necessary. For example, Knox went looking

No. 18-30715

to kill one of Williams's customers over a pricing dispute. Knox knew Williams was a cocaine dealer, knew the quantities of cocaine Williams distributed, and was occasionally present for drug transactions.

Count one of the second superseding indictment charged Alexander and Knox with conspiracy to distribute and to possess with intent to distribute five kilograms or more of cocaine. Count two charged Alexander with aiding and abetting the possession of five or more kilograms of cocaine with the intent to distribute. Counts three and four separately charged Alexander and Knox with unlawful use of a communications facility, i.e. using a phone to discuss the sale of cocaine. Alexander and Knox both proceeded to a jury trial. Williams, Rumore, Alexander's cousin, and several of Alexander's associates and load-car drivers testified at trial. At the conclusion of the government's evidence, both Defendants moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. The district court denied both motions. The jury found both Defendants guilty on all counts, and specifically found that the conspiracy involved at least five kilograms of cocaine.

The presentence report (PSR) determined that Alexander was responsible for 240 kilograms of cocaine, making his base offense level 36. The PSR also imposed enhancements for possession of a dangerous weapon, making credible threats to use violence and directing the use of violence, committing a pattern of criminal conduct engaged in as a livelihood, and being an organizer and leader of criminal activity that involved five or more participants. The enhancements made Alexander's total offense level 46. The highest guideline level is 43, and the district court imposed a guidelines sentence of life imprisonment.

Knox's PSR determined that he was responsible for 25 kilograms of cocaine and calculated his total offense level as 38, which included a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1. The

obstruction enhancement stemmed from Knox threatening to kill Williams or anyone else who testified against him.  The PSR also determined Knox was a career offender under U.S.S.G. § 4B1.1 because of prior Louisiana state convictions for manslaughter and possession with intent to distribute marijuana.  The district court decreased the drug quantity attributable to Knox, making his total offense level 37.  The district court imposed a low-end guideline sentence of 360 months of imprisonment.

Alexander and Knox filed timely appeals.  We have jurisdiction over the appeals under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.  Defendants make several arguments for why their convictions should be overturned and why their sentences were improper.  Each argument is addressed below.

## II.     Discussion

### A. Alexander

1. The Government Presented Sufficient Evidence for the Drug Count

Alexander first argues the government did not present sufficient evidence for the jury to convict him of the substantive drug count.  We assess "whether the record evidence could reasonably support" the jury's verdict. *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  Although we review the sufficiency of the evidence de novo, it is "highly deferential to the verdict." *United States v. Bowen*, 818 F.3d 179, 186 (5th Cir. 2016) (per curiam) (quoting *United States v. Beacham*, 774 F.3d 267, 272 (5th Cir. 2014)).  "We view the evidence in the light most favorable to the government and give the government the benefit of all reasonable inferences and credibility choices." *United States v. Barnes*, 803 F.3d 209, 216 (5th Cir. 2015) (quoting *United States v. Williams*, 507 F.3d 905, 908 (5th Cir. 2007)).

To convict a defendant of possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841, the government must prove "(1) knowledge, (2) possession, and (3) intent to distribute the controlled

substance." *United States v. Mata*, 491 F.3d 237, 242 (5th Cir. 2007). Alexander argues the government did not prove that he ever possessed the cocaine. But "[p]ossession may be actual or constructive, may be joint among several defendants, and may be proven by direct or circumstantial evidence." *United States v. Ramos-Cardenas*, 524 F.3d 600, 605 (5th Cir. 2008) (per curiam). Constructive possession is "the knowing exercise of, or the knowing power or right to exercise dominion and control over the proscribed substance." *United States v. Molinar-Apodaca*, 889 F.2d 1417, 1423 (5th Cir. 1989) (quotation omitted). Alexander admits that his associates testified that he purchased the cocaine. There was also testimony that Alexander called suppliers in Houston to arrange cocaine purchases, put vacuum sealed cash in the secret compartment of load cars that the supplier would replace with cocaine, paid women to drive the load cars, would meet the driver upon arrival to pay her, and that his associates sold cocaine they received from Alexander. Thus, the government presented ample evidence for a jury to convict Alexander on the possession count.

2. The Government Presented Sufficient Evidence for the Phone Count

Alexander next argues the government did not present sufficient evidence for the jury to convict him of the phone count. We review the sufficiency of the evidence under the same standard articulated above with respect to the drug count. To convict a defendant of unlawful use of a communications facility in violation of 21 U.S.C. § 843(b), the government must prove the defendant "(1) knowingly or intentionally (2) used a communications facility (3) to facilitate the commission of a drug offense." *United States v. Mankins*, 135 F.3d 946, 949 (5th Cir. 1998) (emphasis removed). The government admitted three recordings of phone calls made by Alexander to an associate on July 14, 2013, to discuss the sale of cocaine. The associate identified Alexander's voice on the recordings. In the first call, Alexander

instructed the associate to sell two kilograms of cocaine to the customer. In the second call, Alexander confirmed the identity of the customer. In the third call, Alexander asked whether the customer had been told where to go to complete the sale. Special agent Mark Lusco, who testified as an expert in drug trafficker terminology, corroborated the subject of the phone calls. The government therefore presented ample evidence for a jury to convict Alexander on the phone count.

### 3. Alexander Failed to Adequately Brief Sentencing Issues

Finally, Alexander attempts to challenge the district court's determination of drug quantity and all four sentence enhancements. But his arguments are nothing more than conclusory assertions that the district court erred. An issue that is not adequately briefed is waived and will not be considered. *See* FED. R. APP. P. 28(a)(8)(A). Because Alexander has failed to abide by the briefing requirements of Rule 28, his sentencing arguments are waived. *See United States v. Reagan*, 596 F.3d 251, 254–55 (5th Cir. 2010) (stating that a failure to explain arguments constitutes waiver for failure to brief).

**B. Knox**

### 1. The Government Presented Sufficient Evidence for Drug Quantity

Knox first argues the government did not provide sufficient evidence for the jury to find he knew or should have known that the conspiracy involved at least five kilograms of cocaine. We review a jury's finding regarding drug quantity de novo and assess whether the record evidence could reasonably support the jury's verdict. *See United States v. Daniels*, 723 F.3d 562, 570 (5th Cir. 2013) (employing the *Jackson* standard of review for a challenge to a jury's drug quantity finding). Knox was an enforcer in Williams's cocaine distribution enterprise. At trial, Williams testified that he spoke with Knox almost daily, that Knox was occasionally present for drug transactions, and

No. 18-30715

that Knox was aware of the quantities Williams distributed. This constitutes sufficient evidence for a jury to find that Knox either knew or should have known that the conspiracy involved five or more kilograms of cocaine. We affirm his conviction.

2. There was No Clear Error for the Obstruction of Justice Enhancement

Knox next argues the district court erred when it imposed a sentencing enhancement for obstruction of justice. A district court's determination that a defendant obstructed justice is a finding of fact that we review for clear error. *United States v. Zamora-Salazar*, 860 F.3d 826, 836 (5th Cir. 2017). The PSR provided detailed information regarding Knox's threats to anyone who testified against him. Further, as the district court noted, Williams was attacked shortly after testifying at a pre-trial hearing. There was ample evidence to justify an obstruction enhancement.

Because PSRs are presumed reliable, a sentencing court may adopt a PSR's findings regarding obstruction of justice absent rebuttal evidence by the defendant. *United States v. Rodriguez*, 602 F.3d 346, 363 (5th Cir. 2010). Because Knox did not provide rebuttal evidence before the district court, it was "free to adopt the PSR's findings without further inquiry or explanation." *Id.*

3. Knox Fails to Demonstrate Plain Error as to the Career Offender Status Determination

Finally, Knox argues that the district court erred in determining he is a career offender under U.S.S.G. § 4B1.1 because the Louisiana crime of manslaughter is not categorically a crime of violence. We review de novo whether a prior conviction is a crime of violence. *United States v. Hernandez-Montes*, 831 F.3d 284, 289 (5th Cir. 2016). At sentencing, Knox withdrew his objection to his career offender designation. Arguably, then, he waived his challenge. *See, e.g., United States v. Musquiz*, 45 F.3d 927, 932 (5th Cir. 1995) (withdrawing an objection waives the challenge).

No. 18-30715

The specific objection he now raises was never made so, assuming arguendo it is not waived, it must be reviewed for plain error. *United States v. Olano*, 507 U.S. 725, 733–734 (1993). To demonstrate plain error, Knox must show there was an error, that the error was plain, and that the error affected his substantial rights. *Id.* at 732–34. Plain error is one that is so "clear or obvious" that it is not "subject to reasonable dispute." *Puckett v. United States*, 556 U.S. 129, 135 (2009).

A felony offense is a crime of violence if it "has as an element the use, attempted use, or threatened use of physical force against the person of another" or is one of certain enumerated offenses, including voluntary manslaughter. *See* U.S.S.G. § 4B1.2(a). Whether a conviction is a crime of violence is determined using the "categorical approach"—we look only to the statutory elements and not to the facts underlying the defendant's conviction. *See Taylor v. United States*, 495 U.S. 575 (1990). The Government concedes that there is no basis to apply the modified categorical approach here because the underlying appropriate documents from this manslaughter conviction were never presented to the district court. The government also states that the Louisiana manslaughter statute is broader than generic manslaughter. *Compare* LA. REV. STAT. ANN. § 14:31(A)(2) (defining "[a] homicide committed without any intent to cause death or great bodily harm" as manslaughter) *with* MODEL PENAL CODE § 210.3 (requiring at least recklessness to qualify as manslaughter).

We need not decide whether Knox's Louisiana manslaughter conviction qualifies as generic manslaughter because we conclude he fails to show plain error as to whether it qualifies as a "use of force" crime of violence. The full parameters of "use of force" in the context of a manslaughter statute such as this one are unclear. In *United States v. Castleman*, the Supreme Court stated, "[i]t is impossible to cause bodily injury without applying force in the common-

8

law sense." 572 U.S. 157, 170 (2014). In *United States v. Reyes-Contreras*, we overruled the distinction between direct and indirect force, but we left open the question of whether the negligent use of force or homicide by omission qualifies. 910 F.3d 169, 181–83 & n.25, 32 (5th Cir. 2018) (en banc). Given the unresolved state of the law, it is not "clear" or "obvious" that Louisiana manslaughter is not a crime of violence. *Puckett*, 556 U.S. at 135. Therefore, the district court did not commit plain error in characterizing Knox's manslaughter conviction under Louisiana law as a crime of violence. *See Henderson v. United States*, 568 U.S. 266, 273 (2013) (noting there is no plain error when the law is unsettled at the time of appellate review).

AFFIRMED.