# United States Court of Appeals for the Fifth Circuit

_____

No. 23-50277
Summary Calendar
_____

United States Court of Appeals
Fifth Circuit

**FILED**
April 9, 2024

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Jorge Luis Sanchez Morales; Luis Reyes-Perez

*Defendants—Appellants*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC Nos. 3:19-CR-308-1, 3:19-CR-308-3

_____

Before Richman, *Chief Judge*, Oldham, and Ramirez, *Circuit Judges*.
Per Curiam:*

Jorge Luis Sanchez Morales and Luis Reyes-Perez appeal their convictions related to their participation in a drug trafficking organization. Following a jury trial, Sanchez Morales was convicted of conspiracy to possess with intent to distribute five kilograms or more of cocaine (Count One); conspiracy to import five kilograms or more of cocaine (Count Two);

_____

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

conspiracy to possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine (Count Three); conspiracy to import 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine (Count Four); conspiracy to commit international money laundering (Count Six); and conspiracy to launder monetary instruments (Count Seven). Following the same jury trial, Reyes-Perez was convicted of conspiracy to possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine (Count Three) and conspiracy to import 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine (Count Four). Both Sanchez Morales and Reyes-Perez challenge the district court's denial of their motion for a judgment of acquittal on all relevant counts of the indictment. We affirm.

I.

From 2002 to 2019, Sanchez Morales led a drug trafficking organization in Atlanta, Georgia. Sanchez Morales arranged for methamphetamine and cocaine to be smuggled from Mexico into El Paso, Texas, stored in stash houses, and then transported via modified semi-trucks cross-country to Atlanta, Georgia. Money would then flow back to drug cartels in Mexico. Starting in 2013, Reyes-Perez transported the drugs in a yellow semi-truck.

A few key discoveries led to Sanchez Morales's and Reyes-Perez's arrests. In 2015, officers in Clint, Texas, raided a stash house and discovered several five-gallon buckets of liquid methamphetamine. A few months later, officers in Georgia stopped a truck leaving a suspected stash house and discovered a load of methamphetamine and cocaine. A surveillance camera monitoring the Georgia stash house then caught Reyes-Perez arriving in his yellow semi-truck and watching as other members of the organization

unloaded liquid methamphetamine. In 2016, officers in Texas stopped an SUV and discovered about 15 kilograms of methamphetamine. The SUV's driver worked for Sanchez Morales. And later that year, the DEA raided a methamphetamine lab in Georgia, discovering materials used to convert liquid methamphetamine into crystal form and $10,000 cash. Through these and other investigations, officers discovered or arrested several members of the drug trafficking organization. Some members then became informants pursuant to either plea deals or paid arrangements. Finally, based in part on information from several coconspirator informants, Sanchez Morales and Reyes-Perez were indicted for their roles in the conspiracy.

At trial, five members of the drug trafficking organization testified. The testimony covered the structure of the organization, Sanchez Morales's role as the organization's "boss," ROA.758, the mechanics of smuggling liquid methamphetamine in the semi-trucks, and Reyes-Perez's role driving his yellow semi. The jury convicted Sanchez Morales and Reyes-Perez for offenses relating to their respective roles in the conspiracies.

## II.

Because Sanchez Morales moved for a judgment of acquittal on all counts in the indictment at the close of the Government's case and did not present any evidence, he properly preserved his sufficiency of the evidence claim. *See United States v. Daniels*, 723 F.3d 562, 569 (5th Cir. 2013), *modified in part on reh'g*, 729 F.3d 496 (5th Cir. 2013). We review sufficiency claims de novo. *United States v. Ragsdale*, 426 F.3d 765, 770 (5th Cir. 2005). The verdict will be affirmed if "a reasonable trier of fact could conclude from the evidence that the elements of the offense were established beyond a reasonable doubt, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences from the evidence to support

the verdict." *Id.* at 770–71 (internal quotation marks and citation omitted). We take the drug trafficking and money laundering counts in turn.

First, the drug trafficking conspiracy. To support a conviction for conspiracy to import drugs or to possess drugs with the intent to distribute, the government must prove "(1) the existence of an agreement to import or to possess with intent to distribute; (2) knowledge of the agreement; and (3) voluntary participation in the agreement." *United States v. Lara*, 23 F.4th 459, 470–71 (5th Cir. 2022). Here, Sanchez Morales challenges only that he knowingly and voluntarily participated in such agreements.

Several members of the cocaine and methamphetamine conspiracies testified at trial. They identified Sanchez Morales, described meeting him, and described him as the boss of the drug trafficking organization. Based on this testimony, a reasonable jury could conclude beyond a reasonable doubt that Sanchez Morales not only knowingly and voluntarily participated in the aforementioned drug trafficking conspiracies, but that he was a leader in the conspiracies. *See Ragsdale*, 426 F.3d at 770–71. Although a vast majority of this evidence came from coconspirators' testimony, that testimony was not "incredible or insubstantial on its face." *United States v. Bermea*, 30 F.3d 1539, 1552 (5th Cir. 1994). Moreover, although Sanchez Morales challenges the testimony primarily by attacking the witnesses' credibility, credibility determinations are left to the jury. *See United States v. Barnes*, 803 F.3d 209, 216 (5th Cir. 2015). Accordingly, the district court did not err by denying Sanchez Morales's motion for a judgment of acquittal as to Count One, Count Two, Count Three, and Count Four. *See Ragsdale*, 426 F.3d at 770–71.

Second, the money laundering conspiracy. "To establish conspiracy to commit money laundering, the government must prove (1) that there was an agreement between two or more persons to commit money laundering and

(2) that the defendant joined the agreement knowing its purpose and with the intent to further the illegal purpose." *United States v. Cessa*, 785 F.3d 165, 173 (5th Cir. 2015) (internal quotation marks and citation omitted). Here, Sanchez Morales challenges only his knowing and voluntary participation in the agreements to commit domestic and international money laundering.

Just like the drug trafficking counts, a reasonable jury could conclude beyond a reasonable doubt that Sanchez Morales knowingly and voluntarily participated in the money laundering conspiracies because he directed members of the conspiracies to open bank accounts, orchestrated the deposit of drug proceeds into such accounts, directed members of the conspiracies regarding what to do with the drug proceeds, and made all the decisions regarding the drug proceeds. *See Ragsdale*, 426 F.3d at 770–71. Again, the coconspirator testimony establishing these facts was not "incredible or insubstantial on its face." *Bermea*, 30 F.3d at 1552. And again, the jury was free to determine that the coconspirators were credible witnesses. *Cf. Barnes*, 803 F.3d at 216. Accordingly, the district court did not err by denying Sanchez Morales's motion for a judgment of acquittal as to Count Six and Count Seven. *See Ragsdale*, 426 F.3d at 770–71.

## III.

Reyes-Perez also moved for judgment of acquittal at the close of the Government's evidence. But Reyes-Perez then stipulated to an exhibit and did not renew his motion. This limited reopening likely does not affect our standard of review, *see United States v. DeLeon*, 641 F.2d 330, 333 (5th Cir. 1981), but we need not decide whether Reyes-Perez sufficiently preserved his insufficiency challenge because the evidence is sufficient to support his conviction, even under the more lenient de novo standard. *See United States v. Davis*, 690 F.3d 330, 336–37 (5th Cir. 2012).

Here, Reyes-Perez challenges only the sufficiency of the evidence supporting his knowledge of and voluntarily participation in agreements to import and possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. At trial, three coconspirators testified about Reyes-Perez's participation in the methamphetamine conspiracies. This testimony was corroborated by surveillance footage, photographs, and Reyes-Perez's stipulation. In light of this evidence, a reasonable jury could conclude beyond a reasonable doubt that Reyes-Perez knowingly and voluntarily participated in the aforementioned methamphetamine conspiracies. *See Ragsdale*, 426 F.3d at 770–71. Accordingly, the district court did not err by denying his motion for a judgment of acquittal as to Count Three and Count Four. *See id.*

AFFIRMED.